HOWE v. HOWE & OWEN BALL BEARING CO. et al.

(Circuit Court of Appeals, Eighth Circuit. May 7, 1907.)

No. 2,501.

1. COURTS—FEDERAL COURTS—JURISDICTION—SUSTAINED IF ANY PART OF RECORD DISCLOSES REQUISITE FACTS.

The jurisdiction of a national court may not be renounced or denied where the facts requisite to confer it appear directly or by just inference from any part of the record.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 816.]

2. SAME—AMOUNT—LEGAL CERTAINTY OF INSUFFICIENCY REQUISITE TO DISMISSAL.

A suit cannot be properly dismissed by a Circuit Court as not substantially involving a controversy within its jurisdiction, unless the facts when made to appear on the record create a legal certainty of that conclusion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 816.]

3. SAME—JURISDICTION—FACTS—CONCLUSION.

The matter in dispute was the undivided half of a patent for an invention. There was evidence that 21/155 was sold for $5,000 17 months before the suit was commenced; that the defendant was a citizen and resident of Missouri; that one of the complainants was a corporation of Maine, and the other a stockholder, director, and president thereof; and that the articles of incorporation recited his residence Evansville, Ind.

Held, there was sufficient evidence to sustain the conclusion of the lower court that the value of the property involved in the controversy was more than $2,000, and that the citizenship of the parties was diverse.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 885, 886.]

4. CONTRACTS—BREACH OF SUBORDINATE COVENANT NO DEFENSE—ACTION FOR DAMAGES.

A breach of a covenant, which does not go to the whole consideration of a contract, but is subordinate and incidental to its main purpose, does not constitute a breach of the entire agreement, does not authorize the injured party to rescind the contract, but he is still bound to perform his part of it, and his only remedy is a recovery of damages for the breach.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 1178.]

5. SAME—EXECUTORY AGREEMENT IN CONSIDERATION OF EXECUTED CONTRACT NEITHER UNILATERAL NOR OPTIONAL—FACTS—CONCLUSION.

The owner of one-half of a patent conveyed his half to a third person in trust to form a corporation, to convey his interest in the patent to this corporation for one-half of its stock, and to so distribute his stock that the trustee should receive 21⅔/250 of his share and should hold 215⅝/250 thereof in trust for his wife and child. The owner of the other half of the patent at the same time, in consideration of this deed, agreed with him in writing to convey his half of the patent to the corporation for one-half its stock and to convey to the trustee as his own personal property 21⅔/250 of his share in consideration of services rendered and to be rendered by the latter in the organization and promotion of the corporation.

Held: (1) This was not a unilateral contract or an agreement for an option, but an executed agreement on the part of the first party and an executory one on the part of the second party.

(2) The consideration of the executory agreement was the executed agreement, and it was no defense to a suit for the performance of the former that the trustee had failed to render services to promote the company, because his contract in that regard was subordinate and incidental to the main purpose of the agreement, and did not go to its whole consideration.

[Ed. Note.—For cases in point, see Cent. Dig, vol. 11, Contracts, § 8.]

**6.** SPECIFIC PERFORMANCE—PRIOR AGREEMENT TO CONVEY TO ANOTHER NOT A PARTY NO DEFENSE.

A prior agreement of a defendant to convey a part of the property in controversy to a third person, who is not a party to the suit, is no defense to a suit for specific performance of a subsequent agreement to convey the same property, because the decree cannot bind or injuriously affect the rights or interests of the absent first contractor.

**7.** TRUSTS—FIDUCIARY RELATION—BETRAYAL OF CONFIDENCE OR BREACH OF DUTY INDISPENSABLE TO AVOID RIGHTS ACQUIRED THEREUNDER.

Some betrayal of confidence or breach of duty is indispensable to the avoidance of titles or rights acquired of his correlate by one in a fiduciary relation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 153.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Missouri.

This is an appeal from a decree for the execution of a trust created by a conveyance, and for the specific performance of a contract to vest the title to a patent for an invention in a corporation and to distribute its stock among those entitled thereto in accordance with their agreed interests. The contract was in these words:

"For and in consideration of one dollar and other good and valuable considerations, receipt whereof is hereby acknowledged, I hereby transfer, assign and set over to James G. Owen my undivided half interest in and to a certain patent and invention, No. 678,619, on a ball journal bearing for railroad and street cars, etc., issued to A. F. Howe and E. C. Owen, July 16th, 1901.

"In trust for the following purposes:

"1st. Said James G. Owen shall organize a corporation and transfer to said corporation my undivided interest in and to said patent and invention, on the transfer by said A. F. Howe to said corporation of his undivided one-half interest in and to said patent and invention, in consideration for the entire capital stock, that is for said entire patent interest of said Howe and said Owen.

"2nd. To transfer to T. F. Leyden, 10/250 of said capital stocks.

"Said Howe to transfer from his capital stock a like proportion, both in consideration of the advance by said Leyden of $5,000.00, as demanded.

"3rd. From the stock in said trustees hands 5/500 to be transferred to W. W. Wilcox. Said Howe to transfer a like amount in consideration of services rendered.

"From the balance of said capital stock in said trustees' hands, he shall retain as his own personal property 21⅔/250 out of said capital stock and said Howe shall transfer a like amount to said James G. Owen in consideration of services rendered and to be rendered in the organization and promotion of said Company. The balance shall be held by him in trust for Mrs. Hattie Owen and child James G. Owen, Jr., as their interest may appear, during the full term of patent, reissues, etc.

"Dated Chicago, Illinois, April 29th, 1902.

"Elmo C. Owen.

"Attest:

"F. M. Williams,

"A. F. Howe.

"I hereby consent and agree to the above conditions this 29th day of April, 1902.
A. F. Howe."

James G. Owen organized the corporation with a capital stock of 10,000 shares of $100 each, but Howe refused to convey his undivided half of the patent to this corporation, and the corporation and Owen exhibited their bill to induce him to perform his contract. There was a decree that Howe and Owen as trustee should convey their respective half interests in the patent to the corporation; that one-half of its capital stock should be issued to Howe and the other half to Owen; that each of them should convey to Thom-

as F. Leyden 10/250 of his stock and to Webster W. Wilcox 5/500 thereof and that Howe should transfer to Owen 21⅔/250 of the stock received from the corporation by him as provided in the agreement.

Luke E. Hart (Richard C. Hart, on the brief), for appellant.
Chester H. Krum (Chappell B. Crawley, on the brief), for appellees.

Before SANBORN and HOOK, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The jurisdiction of the court below is challenged in the brief and argument, but the ruling of that court upon the question of jurisdiction is not assigned as error, and the questions regarding it now 'urged were probably never called to its attention. They are: Was there sufficient evidence that the value of the property in dispute was $2,000 exclusive of interest and costs? And was there sufficient evidence that the complainant Owen was a citizen and resident of a state other than Missouri, the state of the citizenship and residence of,the defendant Howe? The jurisdiction of a federal court may not be renounced or denied where the facts requisite to confer it appear either directly or by just inference from any part of the record. Briges v. Sperry, 95 U. S. 401, 403, 24 L. Ed. 390; Gordon v. Third National Bank, 144 U. S. 97, 103, 12 Sup. Ct. 657, 36 L. Ed. 360; Myers v. Hettinger, 37 C. C. A. 369, 370, 94 Fed. 370, 371; Ward v. Manufacturing Co., 5 C. C. A. 538, 540, 56 Fed. 437, 439; Railway Co. v. Ramsey, 22 Wall. 322, 328, 22 L. Ed. 823; Express Co. v. Kountze, 8 Wall. 342, 19 L. Ed. 457; Jones v. Andrews, 10 Wall. 327, 331, 19 L. Ed. 935; Steamship Co. v. Tugman, 106 U. S. 118, 1 Sup. Ct. 58, 27 L. Ed. 87; Bondurant v. Watson, 103 U. S. 281, 26 L. Ed. 447.

There is evidence in this record that within a few months prior to the execution of the contract in suit Leyden paid $5,000 for an agreement that he should receive 20/55 of the issued stock of a corporation whose only property was to be this patent. There was no evidence that the patent became less valuable, and this suit involved one-half of it. "A suit cannot be properly dismissed by a Circuit Court as not substantially involving a controversy within its jurisdiction unless the facts, when made to appear on the record, create a legal certainty of that conclusion." Wetmore v. Rymer, 169 U. S. 115, 128, 18 Sup. Ct. 293, 42 L. Ed. 682. The facts which appear in this record establish no legal certainty that the value of the property in dispute in this suit was less than the jurisdictional amount, but they persuasively indicate that it was more.

The articles of incorporation of the Howe & Owen Ball Bearing Company, which are in the record, prove that it is a corporation organized in November, 1902, under the laws of the state of Maine, that James G. Owen was its president and one of its stockholders, and they recite that his residence was Evansville in the state of Indiana. From these facts the legal presumption arises that Owen was a resident and citizen either of the state of Maine, because he was a stockholder of a corporation of that state, and the presumption is that all who compose a corporation are citizens and residents of the state from

which it derived its powers (St. Louis & San Francisco Ry. Co. v. James, 161 U. S. 545, 554, 16 Sup. Ct. 621, 40 L. Ed. 802, and cases there cited), or of the state of Indiana, because he was a resident of that state, and the presumption is that a person is a citizen of the state of his residence, and in either event the citizenship of the parties to this suit was diverse. Facts sufficient to sustain the jurisdiction of the Circuit Court thus appear in the record.

The defendant Howe complains of the decree that it is not sustained by the evidence, and that it is inequitable for many reasons. An accurate knowledge of the parties to the contract, of their relations and of the nature and consideration of the agreement which the decree enforces, will be conducive to a clear understanding and proper appreciation of the various objections to the decree and of their discussion. When this contract was made, Elmo C. Owen owned one half and the defendant A. F. Howe the other half of the patent which is the subject of the agreement and of this suit. Elmo C. Owen was very ill, and about to undergo an operation for appendicitis, from which he subsequently died. James G. Owen, the complainant, was his brother and an attorney at law. The principal parties to the agreement and the only parties who signed the contract were Elmo C. Owen and A. F. Howe. James G. Owen was a party to it so far as his acceptance of the trust imposed upon him by the conveyance of Elmo Owen bound him to discharge his duties as trustee. The terms of the contract were agreed upon between James G. Owen and A. F. Howe while the death of Elmo was imminent, and it was then taken to Elmo C. Owen, who signed it upon the operating table just before the operation. By this contract Elmo conveyed his half interest in the patent to James G. Owen in trust to convey it to the corporation which he was to organize and to vest in Leyden, Wilcox, and James G. Owen 34⅛/250 of his half of the entire stock of the corporation which was to be issued for the patent, and to hold the remainder in trust for his wife and child, in consideration that A. F. Howe would convey his half of the patent to the same corporation and would transfer 34⅛/250 of his half of the stock of the corporation to Leyden, Wilcox, and James G. Owen. In consideration of this conveyance in trust made by Elmo C. Owen, Howe then agreed in writing to make this conveyance and these transfers. The contract thus became an executed agreement on the part of Elmo Owen and an executory one on the part of Howe, and all of Elmo's rights to Howe's performance were vested in James G. Owen, the trustee, for the benefit of Leyden, Wilcox, and the widow and child of Elmo. James G. Owen did not sign the agreement, and he did not thereby undertake or agree to do any acts except those imposed upon him by the trust there created, and these were to organize the corporation, to transfer Elmo's half interest in the patent to it, and to receive, distribute, and hold his half of the stock as specified in the contract. This conveyance and this agreement were made on April 29, 1902. On November 6, 1902, the complainant corporation, with an authorized capital stock of 10,000 shares of $100 each, empowered to buy and sell and otherwise deal in and with patents, of which James G. Owen was a stockholder, a director, and the president, was organized in ac-

cordance with the laws of the state of Maine, and on July 24, 1903, Owen notified Howe in writing that this corporation had been organized in pursuance of the agreement; that he was ready as trustee to assign one-half the patent to the corporation; that the latter was ready to issue its stock pursuant to the contract, and he demanded of Howe that he should assign his half of the patent to the corporation, and that he should comply with the terms of the agreement. But Howe declined to do so. We turn now to his objections to the decree that he should perform the contract.

He says that he answered the bill under oath; that his answer is equivalent to one witness; that the contract is an agreement to give an option; that, while there is proof that the corporation is organized and is willing to carry out the agreement, there is no evidence that James G. Owen organized it; that, if he did, there is no evidence that he organized it in performance of the contract; that there is no evidence that he has promoted or will promote the corporation; that the court cannot compel him to promote it, and hence it cannot compel Howe to perform his covenants the consideration of which he insists was the promotion of the corporation by James G. Owen. The rule that an answer under oath, where the oath has not been waived, is equivalent to one witness, and that it may not be overcome except by at least one witness and corroborating circumstances or their equivalent, is conceded; but the objections to the decree rest upon a misconception of the contract. It is more than a mutual agreement whereby the covenants of one party are made the consideration for the covenants of the other. It is an executed trust deed in consideration for which Howe agreed to convey his half of the patent and to transfer 34 1/6/250 of the stock he was to receive therefor. By that deed Elmo C. Owen parted with his entire interest in the patent, in consideration that Howe would covenant to make the conveyance and the transfers which he agreed to execute. In consideration of that covenant, Elmo Owen put the title to his half of the patent in a trustee, and thereby put it in the power of Howe, of Leyden, or of his widow or child, to compel the execution of this trust, to secure the removal of the trustee if he failed in any respect to perform his duty, and the appointment by the court of a substitute who would discharge it. In other words, the only thing which went to the whole of the consideration of the covenants of Howe was the executed trust deed of Elmo C. Owen which forms the first part of this agreement. It was in consideration of this deed, which was executed and cannot be revoked or avoided, that Howe made his covenants. The result is that there is nothing optional about the execution of this trust or the performance of this contract. The trustee was required to organize a corporation, to convey to it the half interest in the patent, and to receive, transfer, and hold the stock of the corporation as directed in the conveyance to him, and Howe was required to make the conveyance of his interest in the patent and the transfers of his stock. The consideration of these obligations of the trustee and of Howe alike was the executed trust deed of Elmo C. Owen, and neither of them by a failure to discharge his obligation can release the other. If James G. Owen failed to organize the corporation or to discharge any

other duty which his office of trustee imposed upon him, the court, upon the application of any of the cestuis que trust, would appoint a trustee who would execute the trust, and if a corporation was organized, whether by the trustee or by others, which was a fit and willing instrument for the execution of the trust, a court of chancery had ample power, and it was its duty to use it for this purpose and to compel the execution of the trust and the performance of the agreement. The complainant, the Howe & Owen Ball Bearing Company, was such a corporation, and the court has rightfully used it to carry out the trust, whoever inspired its organization.

Moreover, the evidence leaves no doubt that it was created by James G. Owen, the trustee, in pursuance of the trust deed. It is true that no witness so testifies. But the deed imposed upon him the duty of organizing such a corporation. Such a corporation was organized. He is one of the stockholders, one of the directors, and the first president of it, and it joins with him to execute the trust imposed by the deed. Acts frequently speak louder and more truthfully than words. The facts which have been recited are more persuasive than the testimony of a single witness and corroborating circumstances sometimes prove to be, and they convince that this corporation was organized by James G. Owen pursuant to the agreement and in the execution of the trust imposed upon him by the deed it embodies.

A paragraph of the trust deed contains these words:

"From the balance of said capital stock in said trustee's hands he shall retain as his own personal property $21\frac{2}{3}/250$ out of said capital stock and said Howe shall transfer a like amount to said James G. Owen in consideration of services rendered and to be rendered in the organization and promotion of said company."

Counsel for Howe contend that he should not be required to perform his agreement, and if he should be compelled to perform any part of it he should not be called upon to convey this $21\frac{2}{3}/250$ of his stock to James G. Owen, because the latter has not rendered the services in the promotion of the company which he was to render in the future at the time the agreement was made, and because a court of equity has no power to compel him to render such personal services. But James G. Owen's failure to render these services is no defense to this suit, nor to the demand for the transfer of this stock to him, because the consideration of that transfer was services that had been rendered as well as those that were to be rendered in the organization and promotion of the company, and because he has organized it and has promoted it as far as he can do so before the company secures the patent and issues its stock which the defendant Howe prevents. Conceding, therefore, that James G. Owen made an agreement to render services in the promotion of the company, the rendition of those services was not a condition precedent, but a condition subsequent, to the conveyance of the stock to it, and Howe is estopped from defending his demand for it on the ground that he has not rendered the services, because he is preventing him from doing so by his breach of his agreement.

Again, the failure of Owen, the individual, to promote the company, is no defense to the suit by the corporation and Owen, the trustee, for the specific performance of the entire contract by Howe, because the covenant to promote, if it exists, is an individual covenant of Owen which does not go to the whole consideration of the contract, but is subordinate and incidental to, and relates to, less than one-tenth of it. A breach of a covenant which does not go to the whole consideration of the contract, but is subordinate and incidental to its main purpose, does not constitute a breach of the entire contract, does not authorize the injured party to rescind the agreement, but he is still bound to perform his part of it, and his only remedy is a recovery of damages for the breach. Kauffman v. Raeder, 47 C. C. A. 278, 286, 108 Fed. 171, 179, 54 L. R. A. 247. And when a contract has been partially executed, and one of the parties has derived substantial benefits, or has imposed upon the other material losses through the latter's partial performance of the agreement, then the first party cannot rescind the contract on account of the failure of the second party to complete his performance; but the agreement must stand, the first party must perform his part of it, and his only remedy for the failure of the second party to completely perform is compensation in damages for the breach. Kauffman v. Raeder, 47 C. C. A. 278, 284, 108 Fed. 171, 177, 54 L. R. A. 247, and cases there cited. Howe has derived the benefit of a conveyance by Elmo C. Owen of one-half of the patent to a trustee to vest the title in a corporation, and has imposed upon him and his estate the loss of the title to it, in consideration of his agreement to convey his half of the patent to the same corporation and to make the specified transfers of stock, and he cannot now rescind or renounce his contract. He must perform it and seek in damages his remedy for any breaches of incidental or subordinate agreements.

The next objection to the decree is that the contract is so uncertain that a court of equity may not justly decree its performance because it contains no stipulation which specifies the amount of the capital of the corporation to be organized, the amount, if any, of treasury stock it should have, the amount, if any, of stock which James G. Owen should use in its organization and promotion, the price per share at which it should be sold, the amount of capital which should be raised by James G. Owen in its organization and promotion, the state under whose laws it should be organized, whether or not its certificate of incorporation should provide for cumulative voting, and other similar possible or probable corporate attributes or concomitants, and in support of this objection counsel refer to evidence that at the time the contract was made the parties agreed to leave the amount of the capital stock of the corporation for future determination, and that at a subsequent time James G. Owen and Howe agreed that it should be $1,000,000. But neither this testimony nor the presence nor absence of any agreement with reference to the details of a corporate organization here suggested was either material or relevant to any issue in this case. No agreement about any of these corporate attributes or details of organization was either

essential or material to a certain and definite contract for the purpose for which this agreement was made. That purpose was to make a trust deed and a contract effective to put the title .to the patent in a corporation and to cause the stock of the corporation to be distributed among the parties entitled thereto in the proportions specified in the trust deed. This object was as clearly and definitely evidenced and accomplished by this agreement, which specified the exact proportion of the stock which each party should receive as it could have been if the total amount of the capital stock and all other omitted details suggested had been determined and written down. Whatever the capital stock of the corporation might be, the shares of the respective parties therein were fixed to a legal certainty by this agreement and their rights made definite and judicable. The deed and agreement were complete in themselves, all their essential terms were definite and certain, and their specific performance was enforceable in equity.

Another contention is that the contract was for an option, that it was unilateral, and that James G. Owen was guilty of laches in forming the corporation. But, as has been shown, the contract of Howe was an executory agreement in consideration of the executed trust deed of Elmo C. Owen. It was neither an agreement for an option nor a unilateral contract. James G. Owen, the trustee named in this deed, may lawfully enforce the agreement on behalf of the widow and child of Elmo Owen and the other beneficiaries named therein. On October 10, 1902, Howe notified Owen that he expected him to organize the company within the next 30 days. The certificate of organization of the corporation is dated November 6, 1902. This suit was brought in July, 1903. A suit to enforce the specific performance of a written contract may be maintained at any time within 10 years after default in the courts of Missouri (Rev. St. 1899, § 4272 [Ann. St. 1906, p. 2347]), and the doctrine of laches is generally applied in conformity to the analogous statute for the like action at law. Neither Owen nor the corporation were guilty of any culpable laches in this case.

On February 19, 1902, Elmo C. Owen and the defendant Howe made a written contract with Thomas Leyden that he should advance to them $5,000 to make and test some ball bearing journal boxes; that after the test they would organize a corporation with a capital stock of $250,000; that the patent should be conveyed to this corporation; that its stock of the par value of $95,000 should be placed in its treasury; that its stock of the par value of $20,000 should be issued to Leyden, and its stock of the par value of $135,000 should be issued to Elmo Owen and Howe; and that the corporation should pay to them 10 cents for each ball bearing journal box manufactured. There is testimony in the record to the effect that in the course of the negotiation for this agreement before and at the time it was made there were oral contracts that Leyden should have the same interest in the patent before as after the organization of the corporation, and that he should participate in its organization. But under a familiar rule the written contract must be conclusively presumed to embody the entire agreement of the parties and to

express the full extent of their obligations. These parol negotiations and covenants are immaterial and will not be farther noticed. Leyden advanced the $5,000, and counsel for Howe assail the decree on the ground that Leyden had an interest in the patent, and that the decree injuriously affects his rights. No decree may be lawfully rendered in a suit in equity which radically and injuriously affects the rights or interests of an absent party. Shields v. Barrow, 17 How. 130, 138, 141, 15 L. Ed. 158; Cameron v. McRoberts, 3 Wheat. 591, 4 L. Ed. 467; Mallow v. Hinde, 12 Wheat. 197, 6 L. Ed. 599; Kendig v. Dean, 97 U. S. 423, 426, 24 L. El. 1061; Northern, etc., R. Co. v. Michigan, etc., R. Co., 15 How. 233, 244–246, 14 L. Ed. 674; Chadbourne v. Coe, 2 C. C. A. 327, 51 Fed. 479; Sioux City, etc., W. Co. v. Trust Co., 27 C. C. A. 73, 82 Fed. 124. But the only right Leyden had here was the right to a specific performance of his contract or to damages for its breach. He is not a party to this suit, and is not bound by this decree, and he will not be, unless he exercises his option to accept the stock adjudged to him thereby. The decree neither deprives him of any remedy nor affects his rights or interests. The corporation to which the title to the patent is to be conveyed and all who receive any of its stock under the decree take with full notice of his contract and of his rights and interests thereunder and subject thereto. He is and will be as free to enforce them against the corporation and its stockholders as he was to urge them against Owen and Howe before this suit was commenced, and he can as easily and efficiently enforce them against the latter as the former.

Nor does the condition of the title to the patent present any obstacle to the decree or to its execution. A court of equity may not adjudge that a defendant who has no title shall convey one. The holder of the title is an indispensable party to a decree for its conveyance. Kennedy v. Hazleton, 128 U. S. 671, 9 Sup. Ct. 202, 32 L. Ed. 576. But Leyden has no title to the patent or to any part of it. The limit of his right is to exercise his option to enforce specific performance of his contract, or to recover damages for its breach, if any. The entire title to the patent is in Howe and James G. Owen as trustee. They are parties to the suit, and the court may require them to transfer this title. Because the entire title to the patent is in the parties to the suit, and because the decree does not radically or injuriously affect any of the rights or interests of Leyden, his contract presents no legal or equitable obstacle to it.

Finally, it is contended that James G. Owen occupied such a confidential relation to his brother Elmo and to Howe that he could not lawfully acquire and hold his rights under the trust deed and contract to a share in the stock of the corporation which he has organized. He was an attorney at law. He had frequently advised Howe and his brother Elmo in relation to their patent and in relation to the formation of a corporation. But this appears to have been friendly advice, and no relation of attorney and client has been proved. The trust deed and contract were dictated by another attorney, agreed upon by Howe and James G. Owen, and written out by the latter. The principle of law which in some cases forbids one from holding property acquired through a fiduciary relation does not denounce or de-

stroy all rights and titles thus acquired. It is that one who occupies a fiduciary relation to another in respect to business or property, who by the wrongful use of the knowledge he obtains through that relation, or by the betrayal of the confidence reposed in him under it, acquires a title or interest in the subject-matter of the transaction antagonistic to that of his correlate, thereby charges his title or interest with a constructive trust for the benefit of the latter, which the cestui que trust may enforce or renounce at his option. The test of such a trust or prohibition is the fiduciary relation and a betrayal of the confidence reposed or some breach of duty imposed under it. Steinbeck v. Bon Homme Min. Co. (C. C. A.) 152 Fed. 333; Boone v. Chiles, 10 Pet. 177, 209, 9 L. Ed. 388. James G. Owen occupied no confidential or fiduciary relation to Howe within the meaning of this principle of the law. He betrayed no confidence reposed in him, and he was guilty of the breach of no duty which he owed to Howe. The latter knew the value of the patent as well as Owen. He understood the terms, the meaning, and the effect of his agreement to transfer to Owen 21⅔/250 of his share of the stock of the corporation just as well as Owen understood it, and he told Elmo that the contract was right and covenanted in writing to perform it. There was no betrayal of confidence or breach of duty here, and the court below rightly enforced the performance of the agreement.

The decree below must be affirmed, and it is so ordered.