77 So.2d 376

**W. S. SIMPSON**

v.

**Rufus WARD.**

**3 Div. 974.**

Court of Appeals of Alabama.

Aug. 31, 1954.

Rehearing Denied Oct. 19, 1954.

Jones & Nix, Evergreen, for appellee.

Edwin C. Page, Jr., Evergreen, for appellant.

HARWOOD, Judge.

In the suit below a verdict was returned in favor of the plaintiff on count 3 of his complaint, and his damages were fixed at $1,000. Judgment being entered pursuant to the verdict the defendant perfected an appeal to this court.

Count 3, a simple negligence count, was as follows:

"Plaintiff claims of the Defendant the sum of $10,000.00 as damages for that heretofore on, to-wit: September 3, 1952, Defendant was engaged in operating a taxi, or common carrier for hire, in Evergreen, Conecuh County, Alabama, and that Plaintiff, a fare-paying passenger, was being driven along the road in Conecuh County, Alabama, known as the Old Greenville Road leading from U. S. Highway #31 to Owassa, Alabama, in one of Defendant's Taxis; and that while Plaintiff was alighting or attempting to alight from said taxi, Defendant by his agent, servant or employee while acting within the line and scope of his authority as such, negligently ran said taxi into, over or against Plaintiff, and by reason thereof and as a proximate result and consequence thereof, the Plaintiff received severe personal injuries in this, to-wit: He was crippled; his leg was bruised and lacerated; he was made sick, sore and lame; he was permanently injured; he suffered and continues to suffer great mental anguish and physical pain, for all of which he claims damages as aforesaid; hence this suit."

A demurrer containing numerous general grounds was filed to the count, and by the court overruled. This ruling by the court is made the basis of appellant's assignments of error 1, 2, and 3.

In his brief counsel for appellant states: "The defendant demurred to the third count of the complaint on the grounds the complaint is vague, and indefinite, that it is duplex, and that it failed to show where the plaintiff was situated at the time of the accident." The argument in support of the three grounds is thereafter developed in full.

In every action grounded solely on negligence there are three essential elements to a right of recovery. First, a duty owing from the defendant to the plaintiff; second, a breach of that duty, and third, an injury to the plaintiff in consequence of that breach. Tennessee Coal, Iron & R. Co. v. Smith, 171 Ala. 251, 55 So. 170; Alabama Great Southern R. Co. v. Campbell, 32 Ala.App. 348, 26 So.2d 124.

The facts alleged in the complaint show the plaintiff to be a fare paying passenger in one of defendant's vehicles. No need arose to specifically charge the conclusion that a duty existed. Louisville & N. R. Co. v. Robinson, 213 Ala. 522, 105 So. 874. Clearly, the other essential elements to plaintiff's cause of action were alleged. Thus basically the complaint stated a cause of action even though lacking in the demands of good pleading. Such defects as were present should have been pointed out specifically in the grounds assigned to the demurrer, and not merely by grounds general in nature. Section 236, Title 7, Code of Alabama 1940, and cases annotated thereunder. No error therefore will be cast upon the trial court because of the ruling on the demurrer.

The evidence presented below is in much of its direction without contradiction. It tends to show that Pete Davis was the driver of a cab operated by the appellant. On the afternoon of 3 September 1952 the appellee asked Earl Sims to get a taxi for him. Sims obtained the cab driven by

52

Pete Davis. This cab picked up the appellee and his friend John Cunningham. Cunningham agreed to stand for the fare. Cunningham and appellee sat on the rear seat, and Davis the driver, and Sims sat on the front seat. Ostensibly the cab was hired to take appellee to his home. Sims apparently went along for the ride. At any rate, a few miles out appellee had the taxi stop and he went into the woods and returned with a gallon of whiskey. All of the party except the driver began to partake of the beverage. Several stops and changes in plans were made, and eventually the passengers wanted to be driven to a beer joint some distance away. Pete Davis the driver, who had not joined in the drinking, objected to the whiskey being in his cab. The appellee announced he would get out and walk home. The cab was stopped to eventuate this suggestion and it was at this time that the plaintiff was injured. It is at this point too that contradictions appear in the evidence.

According to the appellee, when the cab stopped he was in the act of alighting when Cunningham grabbed the jug of whiskey which appellee was taking with him. While they were pulling for this prize the cab was started off suddenly and the door struck appellee, knocking him into the vehicle. His leg was caught between the wheel and fender and thus injured.

At one point in his testimony the appellee stated he had gotten both feet on the ground when the cab was started. At another point he stated "part of me was in the car until I got slung slam shut of it." At any rate, it appears under his testimony that he had hold of the jug, or of the car, at the time the car was driven forward.

The witness, Pete Davis, testifying for the defense, stated that when the cab stopped at the point of the accident: "I opened the door and he got out on the outside on the ground, stood there and Rufus and John were wrestling over the whiskey. John wanted another drink of it before he left him. They wrestled over it a minute or two. * * * I held the door open until John turned and slid back over and told me all right, go ahead, and I pulled

the door to and started to pull off and I heard Rufus holler and I stopped."

Appellant's assignments of error 8 and 9 relate to the refusal of his request for the affirmative charge.

Error is urged in this regard on two grounds.

■ First, that the evidence shows that the defendant was drunk at the time of his injury, and that this condition, and not any negligence on the part of appellant's agent, was the cause of his injury.

In this regard, the evidence of the appellee tends to deny that he was drunk. He himself testified that he took only two drinks on the entire trip. Another defense witness, to whose home he was taken immediately after the injury, testified that appellee was not drunk at that time. As to whether the driver of the taxi was negligent was, under the conflicting evidence, a question of fact solely within the province of the jury to resolve. Birmingham Electric Co. v. Linn, 33 Ala.App. 486, 34 So.2d 715.

As a second basis, counsel argues that appellant's requested affirmative charge should have been given because of the variance between the allegations of the complaint and the proof submitted.

Counsel contends that the complaint alleges plaintiff was being driven along the road in Conecuh County; and that while plaintiff was alighting, etc., whereas the proof shows that the injury occurred after the plaintiff had fully alighted from the cab.

The substance of the issue of this case is whether the appellant's agent was negligent in starting the cab before the appellee had alighted therefrom. The allegation in the complaint that plaintiff was being driven along a road is irrelevant to to the real issue, and proof of this irrelevant matter was not required.

■ The complaint alleges that the negligence of appellant's agent occurred while

plaintiff was alighting, or attempting to alight, from the cab. We do not accord with counsel's contention that the evidence shows that the plaintiff had fully alighted from the cab at the time he was injured. The plaintiff testified that "part of me was in the car until I got slung slam shut of it." This was sufficient to make a question of fact for the jury to determine as to whether the plaintiff had completed his "alighting" at the time he was injured.

Even so, under the appellant's evidence the plaintiff was yet wrestling for the possession of his jug of whiskey at the time the cab was started. The jury was justified in finding that plaintiff could not be considered to have completely alighted until he had fully disengaged himself and his baggage, i. e., the jug of whiskey, from the cab.

No error therefore resulted from the court's action in refusing appellant's requested affirmative charge.

■ Assignments Four, Five, and Six assert as error the rulings of the court in reference to the establishment of a predicate for the purpose of impeaching the defense witness Pete Davis, and with the admission of testimony tending to establish such impeachment.

During the cross-examination of Davis he had denied he had started his cab while the appellee and Cunningham were wrestling for the jug.

He then testified he had had a conversation with Mr. Emmons, Chief of Police of Evergreen, a day or so after the accident, in front of the Stewart Motor Co. The record then shows the following:

"Q. And in that conversation didn't you tell Mr. Emmons that this accident, that you had carried these boys out there on the road just like you detailed it and that when he got back and got out of that car that you had gotten impatient with him and that you just shot the juice to him and knocked him down? A. No sir.

"Q. Just like—and that you dragged him there under that door? A. No sir, I didn't say any such thing.

"Q. You didn't say any such thing? That you got mad with him and while he was standing there on the ground that last—

"Mr. Page: Now Mr. Jones is telling about three conversations, I object.

"Mr. Jones: Wait a minute I want to get it clear.

"Mr. Page: I object on the ground he hasn't stated there in the exact words the witness stated, he can't state it.

"The Court: Well, he is trying to lay—he did have the conversation, he did or didn't.

"Q. He said—

"The Court: I overrule the objection.

"Mr. Page: All right, we except.

"Q. Didn't you tell him there that after Ward got out on the ground and that door was open that there was a scuffle between John Cunningham and Ward over that jug and you got mad or was peeved with Ward and that you started that car up right quick and closed that door on him and dragged him along there and injured him? A. No sir."

The ultimate predicate laid, in view of the colloquy between court and respective counsel is contained in the last question.

In rebuttal the appellee introduced Chief Emmons as a witness. Several questions were propounded to Emmons relative to the contents of the conversation above mentioned, the questions, objections, rulings, and colloquy covering some two pages. Eventually the following questions and answers were forthcoming:

· "Q. All right, Mr. Emmons, I'll ask you this: If he told you that Ward asked him to let him get out of the car to go home and when he reached back to get his whiskey that John and, John Cunningham and Ward, got in a tussle over the jug and that he pulled off, that was happening and he—A. He pulled off while they had a hold, each one had hold.

"Mr. Page: I object.

"The Court: I overrule the objection.

"Mr. Page: We except.

"Q. Did he tell you substantially that Mr.—

"Mr. Page: I object he's changing the—

"Q. Did he tell you substantially they had a hold of the jug? A. That's right, he did.

"The Court: All right, substantially what I said. You can have the witness."

Clearly certain portions of the answer were within the predicate. The general objection was interposed after the answer was made. No motion to exclude the answer was made. We find no basis for casting error on the trial court in this instance. See Jackson v. State, 35 Ala.App. 542, 50 So.2d 282.

■ Appellant's assignment of error Seven alleges error because of the court's action in overruling his objection to a question propounded by the appellee to the witness Pete Davis, as to whether the appellant had not discharged him as a driver after this accident.

Davis replied he had been discharged, or he had quit and had called the appellant to come and get the cab.

On appellant's motion this evidence was excluded from the jury. No motion for a mistrial was made. In this state of the record no reversible error resulted from the initial ruling.

■ Assignment of error Eleven asserts as error the action of the court in denying appellant's motion for a new trial on the ground that the damages awarded are excessive and result from passion, bias, or prejudice.

In this connection Dr. Turk testified that he had treated the appellee for the injuries sustained. When he first saw appellee he found his ankle sprained and "bruised up some," with a little laceration that was infected. He saw appellee some four or five times, and the infection cleared up in about three months. The doctor had examined the ankle the day of the trial, which was almost a year after it was injured and found it still a little swollen. He stated that because of the length of time the ankle had remained swollen it would be more likely to be a permanent injury than not.

The appellee also testified to his injuries and sufferings, and the handicap resulting, and his ankle and leg were exhibited to the jury.

Under this evidence we find no basis for disturbing the action of the trial court in the premises. Alabama Power Co. v. Adams, 31 Ala.App. 438, 18 So.2d 145.

Assignment of error Twelve asserts error in the action of the court denying appellant's motion for a new trial on the ground that the verdict was contrary to the great preponderance of the evidence.

■ The evidence presented by the appellee is, if believed under the required rule, sufficient to support the verdict rendered. Allowing the presumption of correctness which we must do to the conclusions of the trial court in this matter, we

feel we are unauthorized in disturbing the judgment entered.

Affirmed.

## On Rehearing

In his application for rehearing counsel for appellant argues that we misinterpreted the record in concluding that the court excluded the answer of appellant's witness Pete Davis to the question, "After this ac-

cident happened, occurred, he discharged you, didn't he?," which question was propounded to Davis on cross-examination.

To insure a full review of this point we excerpt the following from the record in this connection:

"Q. You were employed by Mr. Simpson here to drive that taxi, weren't you? A. Yes sir.

"Q. You were his employee? A. Yes sir.

"Q. And was acting then? A. Yes sir.

"Q. As his driver in the usual course of business? A. Yes sir.

"Q. Are you employed by him now? A. No sir.

"Q. After this accident happened, occurred, he discharged you, didn't he?

"Mr. Page: Now, we object.

"The Court: I overruled the objection.

"Mr. Page: We except.

"A. He discharged me the next day, or I quit and called him to come and get the car.

"Q. Discharged you the next day. All right.

"Mr. Page: We move to exclude that from the jury Your Honor.

"The Court: Gentlemen of the jury I'll exclude that statement from your consideration.

"Mr. Jones: We reserve an exception. That's all."

It is counsel's contention that the court's statement, "Gentlemen of the jury I'll exclude that statement from your consideration," related only to the partial repetition of the witness' answer by appellee's counsel, and not to the statement of the witness.

We cannot accord to this view. The record shows that appellee's counsel's utterance was a partial repetition of the answer of the witness. The intonation in which the words were spoken would of course be highly significant in determining whether the utterance was a statement or a question. We have only the written record before us. It is the writer's opinion that the record shows counsel's words in the form of a question. This being so the court's admonition to the jury excluding "that statement," we think, must be deemed to refer to the witness' answer.

My associates do not agree with this view, but are of the opinion that the appellant has not carried its burden of clearly showing error because of the state of the record.

Counsel for appellant further contend for error in our conclusions that the answers of the witness Emmons were substantially within the predicate established during the cross-examination of the witness Pete Davis.

In support of this argument counsel in his brief asserts: "The court in its opinion has quoted verbatim the predicates as to the witness Emmons on pages 68 and 69 of the transcript. The court has also quoted verbatim the answers of the witness shown on page 73 but has failed to make any mention and has completely passed over the answers of the witness Emmons shown on page 72, the answers on page 72 being the very heart of appellant's contention."

We omitted the material on page 72 in the interest of brevity because in our opinion no reviewable point arises from the questions, answers, and rulings appearing on page 72. We are still of that opinion. However, earnest and able counsel requests that we extend this opinion to include this material, and we are glad to comply.

One line of a question appears on page 71, part of the question being carried over to page 72. The remainder of the following excerpt appears on page 72, except for the objection by appellant's counsel, the sustaining of the objection, and the exception reserved by appellant's counsel appearing at the conclusion of the excerpt. These three matters appear at the top of page 73. These small additional matters, not appearing on

page 72 of the record are included to lend clarity to the excerpt, which is as follows:

"Mr. Jones: Well just tell me what he said to you as to how it happened? A. He said he carried those boys that was in—

"Mr. Page: I object, Your Honor.

"The Court: I sustain the objection Mr. Bob you have got to put your question on the predicate you laid there.

"Mr. Jones: That's what I tried to do, Your Honor, I'll ask you this, he stated in that conversation that he stopped that car at the forks of the road there where Mr. Ward was hurt, to let Mr. Ward get out of that car to go home and when he stopped the car that Ward got out, opened the door and got out and reached for his jug of liquor.

"Mr. Page: I object, Your Honor, that's not the predicate he laid.

"The Court: Yes it is, go ahead.

"Mr. Jones: I think it is if the Court please.

"The Court: Substantially that, go ahead.

"Q. When Ward got out that he reached back for his jug of liquor and that Ward and John Cunningham got in a tussle about the jug of liquor, that he got tired of it and started his car and knocked him down.

"Mr. Page: I object.

"The Court: I overrule the objection.

"Mr. Page: We reserve an exception.

"Q. Substantially did he tell you that? A. He told me that they had the whiskey in the car and John wanted a drink before Ward taken it off, Ward had hold of it and John had a hold of it, that he'd fooled with them till he got tired of it and he'd come back to town. Said when he pulled off he heard someone holler and he got up went backward and Ward was laying there hurt.

"Mr. Page: I object to him, he'll have to answer the question—he is stating something else.

"Mr. Jones: That was substantially what I asked him.

"The Court: I exclude his testimony there given the last time from the last statement there from the jury.

"Mr. Jones: We except.

"Q. Did he state to you substantially that he got out, that Ward got out of the car and that Mr. Cunningham and Ward got in a tussle over that liquor and he pulled off and he heard him holler and looked back and he was hurt? A. Well, he didn't say.

"Mr. Page: I object, he's asking something else.

"The Court: I sustain the objection.

"Mr. Jones: We reserve an exception."

It is to be noted that appellant's objection was sustained to the first question.

If the court's statement "Substantially that, go ahead" made in response to the second question be considered a ruling adverse to appellant, no exception was reserved to the ruling.

The third question was not answered until another question was interposed, and the answer finally elicited was excluded on appellant's motion, to which appellee excepted.

The last question was answered before the objection was interposed, though the court did sustain the objection tardily interposed, to which ruling appellee reserved an exception.

The above observations as to the state of the record on page 72 we think sufficiently illustrate our views as to its immateriality and reasons of omitting it from our original opinion.

Application denied.